UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10156 RWZ

_____
                                            )
PHILIP KING,                                )
       Plaintiff,                           )
                                            )
v.                                          )
                                            )
CITY OF BOSTON,                             )
       Defendant                            )
_____)

**DEFENDANT CITY OF BOSTON'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Defendant City of Boston (the "City") files this memorandum in opposition to Plaintiff's Motion for Summary Judgment.  Plaintiff brought this lawsuit originally in Suffolk Superior Court seeking injunctive, declaratory and monetary relief under 42 U.S.C. § 1983, claiming that the City of Boston's application of Massachusetts General Laws Chapter 51, section 1 (hereinafter "the Statute") violated the Ex Post Facto, Due Process and Bill of Attainder clauses of the United States Constitution.  Plaintiff's Complaint also included a claim under common law tort that the City had acted negligently in denying Plaintiff an absentee ballot. The City removed this suit to Federal District Court on January 23, 2004, and shortly thereafter the Plaintiff filed a Motion for Summary Judgment.   Because the Plaintiff's claims are without legal merit, the City respectfully requests that this Court deny the Plaintiff's Motion for Summary Judgment.

## II.  FACTUAL BACKGROUND; UNDISPUTED FACTS

In his Memorandum in support of Motion for Summary Judgment, the Plaintiff sets forth the undisputed facts. The City does not dispute that prior to his incarceration the Plaintiff was a resident of the City of Boston and applied for an absentee ballot, which was denied by the City in October, 2003.

### III.    ARGUMENT

**A.    Summary Judgment Standard**

Summary Judgment must be granted if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In ruling on a summary judgment motion, the Court must view the record and draw inferences in the light most favorable to the non-moving party. Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 486 (1st Cir. 1981). "When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial, there can no longer be a genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994).

This Court must, therefore, undertake to determine (1) whether factual disputes exist, (2) whether the factual disputes are genuine (i.e., a reasonable fact-finder could return a verdict for the nonmoving party on the basis of the evidence), and (3) whether any fact genuinely in dispute is material (i.e., such that it might affect the outcome of the suit under the applicable substantive law). See Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986).

As indicated above, the City does not dispute the facts set forth in the Plaintiff's brief. Even when viewed in the light most favorable to the Plaintiff, the allegations in the Complaint and the Motion for Summary Judgment clearly fail to establish any constitutional violations of the Plaintiff's rights as a matter of law.

**B.    The application of Massachusetts' felony disenfranchisement statute to King is not unconstitutional**

In 2001, the Massachusetts Legislature enacted Mass. St. 2001, c. 150, which amended the statutory qualifications for voting in Mass. Gen Laws Ch. 51, § 1 to exclude incarcerated felons. The Statute provides, "every citizen eighteen years of age or older, not being a person under guardianship or *incarcerated in a correctional facility due to a felony conviction*…who is a resident in the city or town where he claims the right to vote…may have his name entered on the list of voters in such city or town, and may vote therein in any such election." (emphasis added).

Plaintiff claims that the City's application of this statute to a felon who is currently incarcerated but who was convicted prior to enactment of this statute is a violation of a the Due Process, Bill of Attainder, and Ex Post Facto clauses of the United States Constitution. Because Massachusetts's voter qualifications are civil and regulatory in nature rather than penal, the Plaintiff's claims must fail as a matter of law.

   1.    <u>The Validity of Felon Disenfranchisement is Expressly Recognized by the Fourteenth Amendment</u>

In considering the Plaintiff's constitutional claims, it is important to note that the Fourteenth Amendment expressly recognizes that felon disenfranchisement laws are valid, and in fact expressly contemplated application of felon disenfranchisement to persons who committed felonious acts prior to the enactment of the Fourteenth Amendment. In <u>Richardson v. Ramirez</u>,

3

418 U.S. 24, 54 (1974), the United States Supreme Court held that a series of California felon disenfranchisement laws do not violate the Equal Protection Clause of § 1 of the Fourteenth Amendment because §2 of the same Amendment expressly permits States to deny the vote to citizens "for participation in rebellion, or other crime." [1] Ramirez, 418 U.S. at 41-56.  The Court read "other crimes" to include felonies and concluded "the exclusion of felons from the vote has an affirmative sanction in §2 of the Fourteenth Amendment." Id at 54.  Viewed in its historical context as a Reconstruction amendment, it is clear that among the goals of §2 was to allow States to deny the vote to those who had engaged in "rebellion" against the United States during the Civil War.  Any such "rebellion" necessarily predated the disenfranchisement laws contemplated and authorized by §2, therefore, the framers of the Fourteenth Amendment did not view laws disenfranchising citizens for past participation in "rebellion or *other crimes"* as violating the Ex Post Facto clause, the Due Process clause of the same amendment, or any other pre-existing constitutional provisions.

      2.      Felon Disenfranchisement is not punitive in either intent or effect

Art. I, § 10 of the U.S. Constitution provides that "no State shall…pass any… Ex Post Facto Law."  "The Ex Post Facto clause is implicated when the government seeks to apply retroactively legislation that 'inflicts a greater punishment, than the law annexed to the crime, when committed.'" Doe v. Weld, 954 F. Supp. 425, 430 (D. Mass. 1996), quoting Calder v. Bull, 3 U.S. 386, 390 (1978).  The Ex Post Facto clause applies only to criminal statutes.  See

---

[1] §2 of the Fourteenth Amendment provides: "Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed.  But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, *except for participation in rebellion or other crime*, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State." (Emphasis added.)

4

Roe v. Farwell, 999 F. Supp. 174, 183-84 (D. Mass. 1998) (citing Kansas v. Hendricks, 521 U.S. 346 (1997).)

The prohibition against Bills of Attainder is found in Art. I, §10, cl. 1 of the U.S. Constitution, which forbids "legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a trial." United States v. Brown, 381 U.S. 437, 448-49 (1965). Again, the Bill of Attainder clause only applies to "statutes imposing penalties." United States v. Lovett, 328 U.S. 303, 315-16 (1946).

The Plaintiff's Ex Post Facto and Bill of Attainder challenges both hinge on the question of whether application of the Statute constitutes punishment. Doe v. Weld, 954 F. Supp. 425, 431 (D. Mass. 1996). In order to prevail on his claims the Plaintiff must prove that the Statute "punishes" incarcerated felons.

The Supreme Court has not precisely identified what test should be used to determine whether a law imposes "punishment" for Ex Post Facto purposes. Other courts in this circuit, however, have used the established double jeopardy "intent-effects" test, in the Ex Post Facto context. See Roe v. Farwell, 999 F. Supp. 174, 183-84 (D. Mass. 1998) (Young, J.) (Rejecting Ex Post Facto and Double Jeopardy challenges to Massachusetts's sex offender registry law); Doe v. Weld, 954 F. Supp. 425, 431-33 (D. Mass. 1996) (Saris, J.) (same).

In Doe v. Weld, the plaintiffs challenged the newly enacted sexual offender registry law as it applied to juvenile offenders who had been convicted prior to the statute's enactment on Ex Post Facto, Bill of Attainder, Double Jeopardy and Due Process grounds. The Court in Doe applied a two-part test set forth by the Supreme Court in United States v. Ursery, 518 U.S. 267 (1996) to determine whether a law imposes a "punishment." Under the test delineated in Ursery

5

to show that a law imposes punishment, a plaintiff must show either (1) that the Legislature "intended to punish offenders", or (2) that legislation was "so punitive in form and effect as to render it punishment regardless of the legislature's remedial intent." Doe, 954 F. Supp. at 433.

        a.       Mass. Gen. Laws ch.34, §1 has a Civil. Regulatory Intent.

The first part of Ursery test focuses on legislative intent. If a law was intended as remedial or regulatory, then it will not be deemed punishment unless "the party challenging the statute can demonstrate by 'the clearest proof' that the purpose or effect of the statute is so great as to negate the remedial intent." Roe, 999 F. Supp. At 184 (quoting Ursery, 116 S. Ct. at 2148; Hendricks, 117 S. Ct. at 2082; Ward, 448 U.S. at 248-49).

"The determination of whether a particularly statutorily defined penalty is civil or criminal is a matter of statutory construction." Roe, 999 F. Supp. at 185. Here, the text of the Statute does not demonstrate any punitive intent, but rather adds incarcerated felons to the categories of persons – such as minors, persons under guardianship, and persons convicted of corrupt elections practices – whom Massachusetts has deemed to be unfit to exercise the right to vote. The Statute is clearly an exercise of a state's *regulatory* authority to determine voter qualifications.

The Supreme court has acknowledged that states have a "wide scope" in determining voter qualifications and that "residence requirements, age, previous criminal record… are obvious examples of indicating factors which a State may take into consideration in determining the qualifications of voters." Lassiter v. Northampton Election Board, 360 U.S. 45, 51 (1959). The Court's grouping of age and residence requirements along with previous criminal record is a clear indication that the Court does not view disqualification based on criminal record as punitive in nature.

The Supreme Court has long upheld States' authority to prescribe "reasonable voter qualifications", including rules disenfranchising those convicted of particular crimes.  See <u>Davis v. Beason</u>, 133 U.S. 333, 346-47 (1890) (upholding authority of state legislature "to prescribe reasonable voter qualifications," including ban on voting by, <u>inter</u> <u>alia</u>, persons convicted of bigamy or polygamy) cf <u>Murphy v. Ramsey</u>, 114 U.S. 15, 43 (1885) (upholding application of *federal* statute excluding polygamists and bigamists from voting or holding office because statute was "not for the purpose of punishment, but for the sole purpose of determining, as in the case of every other condition attached to the right of suffrage, the qualification of one who alleges his right to vote").

The principle that state laws limiting the right to vote are regulatory, rather than punitive, does not change when those laws are applied to felons.  For example, the Second Circuit, in <u>Green v. Board of Elections of City of New York</u>, 380 F.2d 445 (1967), <u>cert.</u> <u>Denied</u>, 389 U.S. 1048 (1968), held that the New York felon disenfranchisement statutes were not penal laws and therefore did not amount to unconstitutional bills of attainder or impose cruel and unusual punishment.  <u>Id</u>. At 449-50.  The Second Circuit cited Chief Justice Warren, who in <u>Trop v. Dulles</u>, 356 U.S. 86 (1958) cited statutes depriving felons the right to vote as an illustration of a non-penal law.  Chief Justice Warren stated, "a statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate government purpose.  The Court has recognized that any statute decreeing some adversity as a consequence of certain conduct may have both a penal and a nonpenal effect.  The controlling nature of such statutes normally depends on the evident purpose of the legislature… Because the purpose of the statute disenfranchising the convicted felon is to designate a reasonable ground of eligibility for voting,

7

this law is sustained as a nonpenal exercise of the power to regulate the franchise." Trop, 356 U.S. at 96-97.

In Green, the Second Circuit reasoned that "it can scarcely be deemed unreasonable for a state to decide that perpetrators of serious crimes shall not take part in electing legislators who make the laws, the executives who enforce these, the prosecutors who must try them for further violations, or the judges who are to consider their cases." Green, 380 F. 2d at 451. Courts in other jurisdictions have recognizes the nonpenal nature of felon disenfranchisement laws on similar grounds. See Mixon v. Commonwealth of Pennsylvania, 759 A.2d 442, 448 (Pa. Cmwlth 2000) (upholding challenge to state law disqualifying felons from receiving absentee ballots); Fischer v. Governor, 749 A.2d 321, 329-30 (N.H. 2000) (holding that felon disenfranchisement statutes were reasonable exercise of legislative authority); Fernandez v. Kiner, 673 P.2d 191, 193 (Wash. App. 1983) (sustaining felon disenfranchisement statute as a nonpenal exercise of the power to regulate the franchise); Shepard v. Trevino, 575 F.2d 1100, 1115 (5th Cir. 1978) (upholding that state felon disenfranchisement law on the grounds that it bore a rational relationship to a reasonable state interest; Kronlund v. Honstein, 327 F. Supp. 71, 74 (N.D. Ga. 1971) (holding that felon disenfranchisement was a "nonpenal exercise of the State's power to regulate the vote and is not cruel and unusual punishment).

The Plaintiff points to no legislative history to suggest that Massachusetts differs from any of the other 47 States that have enacted felon disenfranchisement laws as a valid exercise of the States' regulatory authority to determine voting qualifications. Further, this Court has recently denied a Preliminary Injunction to bar application of Article 120 of the Massachusetts Constitution, which bars incarcerated felons the right to vote in State elections, on the grounds that the provision did not violate the Ex Post Facto Clause. See Lowe v. Galvin, C.A. No. 01-

10149 (D. Mass. October 16, 2002) (Wolf, J.).  Because the Plaintiff cannot establish that the Statute was enacted with punitive intent, his claims must fail.

                b.        The Effect of Mass. Gen. Laws ch. 34, §1 is not Punitive.

Having established the regulatory, rather than punitive, intent of the Statute, the inquiry turns to whether the Plaintiff can provide the "clearest proof" that the Statute "is so punitive either in purpose or in effect as to negate the State's intention to deem it 'civil.'"  Roe, 999 F. Supp. at 185.  To make this assessment, the Court in Roe employed the seven factors set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169 (163), stating that the factors "provide a useful analytical framework to the punishment analysis and, although not dispositive, are applicable to assess whether a statute is punitive or regulatory." Roe at 186.  The Mendoza-Martinez factors require the consideration of whether the sanction (1) involves an affirmative disability or restrain; (2) has historically been regarded as punishment; (3) comes into play only on a finding of scienter; (4) will promote the traditional aims of punishment-retribution and deterrence; (5) applies to behavior that is already a crime; (6) can be assigned a purpose other than punishment; and (7) appears excessive in relation to the alternative purpose assigned. Mendoza-Martinez, 372 U.S. at 168.

These factors must be considered in relation to the law on its face, and "only the clearest proof" of punitive effect will override a finding of remedial intent.  Roe at 100.

As to the first factor, it may be questioned whether deprivation of voting rights involves an "affirmative disability or restraint," as opposed to loss of a privilege.  The reasoning of Green discussed above would support the conclusion that felon disenfranchisement is merely an additional consequence of breaking the law rather than an affirmative restrain.

As to the second factor--whether felon disenfranchisement "has historically been regarded as punishment"--the cases discussed above clearly establish that it has not.

As to the third and fifth factors--whether the measure comes into play only upon a finding of scienter and applies to behavior that is already a crime--such factors are necessarily implicated where, as here, the adverse effect of a challenged measure is triggered by one's conviction for a crime. But these factors are, by themselves, insufficient to constitute the "clearest proof" that the measure is so punitive in purpose or effect so as to negate its remedial intent. See Roe, 999 F. Supp. at 186-88 (applying Mendoza-Martinez factors to find that Massachusetts' sex offender registry law was not so punitive in purpose or effect so as to negate its remedial intent, notwithstanding that it applies upon a criminal conviction for a sexual offense). As the Second Circuit said of New York's sex offender registry act, "the fact that the Act's requirements are triggered by a criminal conviction is common to all regulatory disabilities that result from a prior conviction, for instance, the loss of the right to vote." Doe v. Pataki, 120 F.3d 1263, 1281 (2d Cir. 1997) (emphasis added). Indeed, the Supreme Court has recognized felon disenfranchisement as the type of state action which, while having both penal and nonpenal effects, is properly deemed to be nonpunitive. Trop, 356 U.S. at 96-97.

As to the fourth factor--whether the measure will promote the traditional aims of punishment, which are deterrence and retribution--it hardly seems likely that disenfranchising incarcerated felons will have any significant effect either in deterring the commission of felonies or in increasing the feeling of crime victims and society at large that felons are "paying the appropriate price" for their crimes. It is primarily the criminal sentence--ordinarily,

incarceration, <u>versus</u> collateral consequences such as loss of voting or other rights[2]--that serves deterrent and, particularly, retributive goals.

---

[2] As another example, Massachusetts law also bars convicted felons from serving as state or local police officers. Mass. G.L. c. 22C, § 14; c. 41, § 96A. Few would seriously argue that such statutes substantially further any deterrent or retributive purpose. Although their application is triggered by a felony conviction, they are primarily if not exclusively regulatory.

As to the sixth factor--whether the measure "can be assigned a purpose other than punishment"--the cases cited above establish that felon disenfranchisement has universally been regarded as having the reasonable regulatory purpose of establishing, for the better functioning of the body politic, who is qualified to exercise the vote. The Statute preserves the integrity of the electoral system by barring from the ballot box persons who, through conviction and incarceration for committing serious crimes against society, have demonstrated their disrespect for law and thus their unfitness to choose who shall make and enforce the laws.

Finally, as to the seventh factor, the Statute does not "appear excessive in relation to the alternative purpose assigned"; it imposes no sanction beyond its regulatory purpose. Indeed, the Statute is more tempered than many other States' felony disenfranchisement laws, in that it suspends felons' right to vote only during the incarceration period, rather than permanently, or during probation or parole.

Thus the <u>Mendoza-Martinez</u> factors favor the conclusion that the Statute is not punitive in purpose or effect. It is important to note that Massachusetts is one of 48 States that have enacted felon disenfranchisement laws. The Plaintiff identifies no aspect of the Statute that makes it so much more punitive than the laws of other States as to compel the conclusion that Massachusetts, alone among these 48 States, has violated the Ex Post Facto, Bill of Attainder or Due Process clauses. The Plaintiff cannot establish by the "clearest proof" that Statute is so punitive in purpose or effect as to negate its regulatory intent.

Both the consideration of §2 of the Fourteenth Amendment and the application of the <u>Ursery</u> intents-effects test to the Statute clearly indicate that the Plaintiff has failed to

establish any violation of the Due Process, Ex Post Facto, and Bill of Attainder clauses of the U.S. Constitution.  Therefore, this Court should deny the Plaintiff's Motion for Summary Judgment.

### IV.   CONCLUSION

WHEREFORE, the City of Boston respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment and grant such other relief as this Court deems just and proper.

**CERTIFICATE OF SERVICE**
**I hereby certify that on this day a true**
**Copy of the above document was served**
**Upon the attorney of record for each**
**Party by mail on March 26, 2004.**
**/s/ Wendy S. Plotkin**

Respectfully submitted,
DEFENDANT, CITY OF BOSTON
Merita A. Hopkins
Corporation Counsel
By their attorney:

/s/ Wendy S. Plotkin
Wendy S. Plotkin  BBO #647716
Stephen Cox BBO #566943
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4023