UNITED STATES OF AMERICA

DISTRICT COURT OF MASSACHUSETTS

CIVIL ACTION NO. 04 10155 RWZ

PHILLIP KING                )
                            )
       Plaintiff            )
                            )
v.                          )
                            )
CITY OF BOSTON              )
                            )
       Defendant            )

## RESPONSE TO DEFENDANT'S OPPOSITION TO SUMMARY JUDGEMENT

BOSTON, as stated in its opposition, does not dispute the facts set forth in KING's brief. **Opposition, III, 3.**

G.L. c. 50, § 1, and c. 51, § 1, are intended to be punishment, although BOSTON suggests that they are regulatory in nature. Yet, neither statute **on its face** indicates whether the legislature intended they be punative or remedial.

When this occurs, the U.S. Supreme Court in **Kennedy v. Mendoza-Martinez**, 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed. 2d 644 (1963), has proposed ten criteria to examine to make the determination and requires them to be applied to the statute **on its face**.

Both statutes deprive a convicted felon of a basic constitutional right, which is clearly punative (1). Historically, the disenfranchisement of felons has been used as punishment (2). Both statutes take effect only upon a

- 1 -

finding of guilt and lasts only during the punishment of incarceration (3, 4 and 5).

BOSTON has not shown that the statutes referenced are regulatory in nature. In fact, KING reiterates that the Congress of the United States enacted 42 U.S.C.A. § 1973aa, which prohibits States from using certain criteria in the disenfranchisement of voters, e.g., moral character.

BOSTON's further suggestion that this disenfranchisement is simply an additional qualification for voting is simply erroneous. The criteria that the person be of the mature age of eighteen can be assigned to a purpose other than that of punishment. That is the immaturity of children to make decisions. This is also applicable to those under guardianship. These persons have been found in a separate hearing to be unable to make their own decisions. However, this does not apply to convicted felons. Nor has the defendant suggested any rationale reason for a finding of the statute being remedial. Simple association is insufficient.

Further, all of the casuistic law cited by BOSTON are pre-enactment of 42 U.S.C.A. § 1973aa, prohibiting disenfranchisement of most of the reasons therein cited.

Casuistic law has consistantly allowed disenfranchisement only as punishment. See, e.g., Wesley v. Collins, 605 F.Supp 802, 813 (6th Cir. 1985); Jones v. Edgar, 3 F.Supp.2d 979, 981 (Ill. 1998) (" ... an act for which they assume the

- 2 -

risks of detection and punishment."); Cf. Hunter v. Underwood, 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985), where Alabama's Constitutional was found unconstitutional because it punished only those crimes "involving moral turpitude" and not all felons.

In Baker v. Pataki, 85 F.3d 919, 931 (2nd Cir. 1996), an in banc court evenly divided (5-5) as to the merits of the case, nonetheless concluded that the "disenfranchisement of felons is designed to punish persons who violate the laws of the state."

The effect to KING is to make more onerous the punishment for crimes committed before enactment of the law depriving him of his constitutional right to vote.

Remedial, adj., affords or provides a remedy, lessening a wrong, fault or defect <a remedial statute>. Black's Law, 7th Ed., page 1296.

Disenfranchise, v., disfranchises, curtailing or rescinding of a right <elective franchise>. American Heritage, 2nd Ed., page 204.

KING would ask what needs to be "healed" here to require the deprivation of one's constitutional right to vote?

The court had it right in Calder v. Bull, 3 Dall. 386, 390, in 1 L.Ed. 648, back in 1798. This case reflects the origins of ex post facto, which reasoned that substantive rights are

constitutionally superior to remedial or procedural intent when determining such violations of the laws relative to ex post facto. See also <u>Dobbert v. Florida</u>, 432 U.S. 282, 293, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

BOSTON's cite of <u>U.S. v. Ursery</u>, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), an in rem prosecution of a forfeiture in a drug case where Congress explicitly designed § 924(d) as a remedial civil sanction and dealt with double jeopardy, is inapposite to the instant argument. <u>Doe v. Weld</u>, 954 F.Supp. 425, 431-33 (D. Mass. 1996) too, a matter which dealt with the newly enacted sex offender registry relative to juveniles, is specious at best.

The disenfranchisement statutes can be bills of attainder when they (1) "determine[s] guilt and inflict[s] punishment," (2) "upon an identifiable individual," and (3) "without provision of the protection of a judicial trial." <u>Nixon v. Adm'r of Gen. Servs.</u>, 433 U.S. 425, 468, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977).

In fact, <u>U.S. v. Brown</u>, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965), another BOSTON citation, is apt when this Cold War case said that "Clause [Bills of Attainder, Art. 1, § 10, cl. 1 of the U.S. Constitution) bars the imposition of punishment resulting from 'trial be legislature.'" <u>Id.</u> at 442 (quoting <u>Consolidated Edison Co. of N.Y. v. Pataki</u>, 292 F.3d 338, 346 (2nd Cir. 2002).

The statute disenfranchising KING from voting is clear and one that is retrospective of necessity. In <u>U.S. v. Sampson</u>, 245 F.Supp.2d 327, 333 (D. Mass. 2003), the court echoded the Supreme Court's instructions that the "court should construe statutes to avoid decision as to their constitutionality" (citations omitted). However, this 'canon of constitutional avoidance' has no application in the absence of statutory ambiguity" (citations omitted).

Finally, BOSTON, as stated in its opposition does not dispute the facts set forth in KING's brief. Further, KING reasserts that he has established the "clearest proof" that the statute is punitive in its purpose, that it is misapplied retroactively, that he is held out as one of a disfavored group deliberately, while his substantive rights have been violated in this disenfranchisement.

Respectfully submitted,

*Phillip King pro-se*
Phillip King, pro se

MCI Shirley Medium

Box 1218

Shirley, MA 01464

April 6, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the defendant's attorney by first class, postage paid.

4/8/2004